ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 4:04CR427 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| DENNIS K. LUCAS, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I. Introduction**

On July 15, 2011, Defendant Dennis Lucas appeared before the Court and admitted to the alleged supervised release violation. The Court then proceeded to sentence Lucas to 24 months incarceration to run consecutive to his state sentence. The matter was appealed and on December 15, 2011 the Sixth Circuit found procedural error in the sentencing. Accordingly, the Court held a resentencing hearing on January 23, 2012. This memorandum will serve to supplement the Court's oral findings during the hearing.

**II. Background**

On January 28, 2011, this Court signed a warrant for Lucas' arrest for violation of his supervised release. Having seen the treatment that Lucas received from the state court on a prior

occasion,[1] this Court ordered him detained on February 3, 2011. On this occasion, however, the Court deferred sentencing until Lucas' state court sentencing had occurred. True to form, the state court gave Lucas a lenient sentence, six months, and again ordered that his sentence be served concurrent with any federal sentence. A little over one month later, this Court sentenced Lucas for his supervised release violation.

During that hearing, the Court initially imposed a sentence of ten months incarceration to be served consecutive to the state sentence of six months. The Court then ordered that Lucas would serve two years of supervised release following his release. Defense counsel then highlighted to the Court that a consecutive sentence could not be successfully imposed because this Court had primary jurisdiction over Lucas. In other words, even if this Court ordered the sentence to run consecutive, Lucas would in all likelihood serve his federal sentence, be released, and the state would deem his sentence fully served. This was not a factor the Court had taken into consideration when it imposed its sentence. Accordingly, the Court immediately revisited its sentence and imposed a sentence of 24 months incarceration with no supervised release to follow. Ultimately, as noted above, the Sixth Circuit found that the Court failed to adequately explain this increase in the sentence. Accordingly, the Court has now resentenced Lucas.

## II. Sentencing Process

Criminal sentencing is often described as a three-step process. A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission. *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines.").

---

[1] This treatment is described in detail below.

In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant. A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply. In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III. Advisory Guideline Calculations

There is no dispute that the applicable Guideline range is four to ten months incarceration. Accordingly, the Court declines to restate that calculation here.

### IV. 3553(a) Factors & Analysis

Based upon a review of the 3553(a) statutory factors, the Court finds that an upward variance is necessary to issue a sentence that is sufficient but not greater than necessary to achieve the purposes of sentencing.

Lucas was placed on supervised release on April 23, 2010. As Lucas' history and

characteristics and the need for deterrence are proper statutory considerations, it is important to explain how Lucas arrived on supervised release on that date. On August 17, 2004, Lucas was indicted with 18 other defendants on charges related to a cocaine distribution conspiracy. Lucas pled guilty to the indictment and was sentenced by this Court to 78 months, the lowest end of the Guideline range, on January 25, 2005. At the time of that sentencing, Lucas had state charges pending against him. Specifically, Lucas had been indicted on September 9, 2004 in Mahoning County Court of Common Pleas. Lucas was charged with aggravated robbery with a firearm specification, a first degree felony, and felonious assault with a firearm specification, a second degree felony. The state court docket reflects that Lucas postponed any plea in that matter until his federal charges were resolved.

By successfully delaying his state court proceedings, Lucas allowed the state court to make a determination regarding whether his state sentence would run consecutive or concurrent to the sentence imposed by this Court. Lucas then received an aggregate sentence of three years for his state crimes. As Lucas' original indictment include a first degree felony with a firearm specification, he faced a minimum term of four years and a maximum term exceeding ten years. As the firearm specification was dismissed by plea agreement, Lucas still faced a sentence of three to ten years. However, Lucas pled his first degree felony down to a second degree felony through the plea agreement as well. Accordingly, Lucas' three year sentence was just above the statutory minimum he could receive. However, the reality is that Lucas received **no** punishment for his state crimes. Instead, with full knowledge of this Court's sentence, the state court ordered Lucas' state sentences to run concurrent with his federal sentence. As a result, Lucas' state sentences expired without him ever serving any period of time for solely those offenses.

Society was quickly punished for the lack of a penalty imposed on Lucas for aggravated robbery and felonious assault.  Lucas was released from federal custody and placed on supervision on April 23, 2012.  Roughly seven months later, Lucas began selling crack cocaine to officers with the Mahoning Valley Law Enforcement Task Force – the precise conduct that generated his indictment and sentence in this matter in January of 2005.

The above facts make two things clear.  First – even a more-than-six year sentence was not sufficient to deter Lucas' criminal conduct.  Second – there is little doubt that the lack of any penalty by the Mahoning County court for two significant violent felonies only served to encourage Lucas to engage in further crime in that area.   Those facts brought Lucas back before this Court.

Lucas' conduct compels an upward variance for several reasons.  First, the conduct is a reoccurrence of the precise conduct that generated his 78 month sentence.  The fact that a 78 month sentence did not deter Lucas lends strong support for the Court's finding that a 10 month sentence would also fail to act as a deterrent.  Moreover, Lucas' conduct indicates that he has determined that selling is drugs is the easiest way for him to make a living.

Furthermore, when Lucas' appeared before this Court for resentencing, his counsel stressed how appreciative Lucas was for the support and love of his family and friends.  The Court gives little value to these statements.  Upon his release from federal custody, Lucas was approved to live with his grandmother who so graciously opened her home to him.  Without permission from his probation officer, Lucas left that residence.  Lucas then began residing with his girlfriend.  Lucas repaid his girlfriend's kindness by selling drugs out of her apartment. Accordingly, rather than appreciate the second chances given to him by his friends and family, it is

readily apparent that Lucas took advantage of those relationships to reenter the drug trade. For all those reasons, the Court finds that a sentence of 24 months is sufficient but not greater than necessary to fulfill the purposes of sentencing.

The Court also rejects the objections raised by Lucas to this sentence. Time and again, Lucas has argued that this Court initially found that a ten month sentence was sufficient but not greater than necessary. Lucas then concludes in some manner that this Court is bound by that finding and that any sentence greater than ten months is unreasonable. This argument lacks merit for several reasons.

First, Lucas' assertion that the Court initially imposed a stand-alone sentence of ten months is demonstrably false. While Lucas argued time and again that his initial sentence was ten months, he wholly ignores the entirety of that initial sentence. At that initial hearing, the Court's initial pronouncement of sentence had **three** components: 1) a ten month term of incarceration in federal custody, 2) a six month term of incarceration in Mahoning County custody, and 3) a two year term of federal supervision.

Each of these components served a distinct purpose when the Court initially fashioned a sentence. First, the Court's term of imprisonment would serve to protect the public and deter Lucas. Second, and perhaps more important given Lucas' past free pass from the County, Lucas would serve time **in Mahoning County** for his state crimes. By serving time imposed by **both** the federal government and the state government, Lucas could learn that **all** of his criminal activities carry consequences. Finally, it was important to the Court to maintain supervision over Lucas to determine whether these two sentences would finally act as a deterrent. It is only the entirety of the Court's sentence, when properly viewed as a package, that was sufficient but not

greater than necessary to fulfill the purposes of sentencing. Lucas' argument that the Court simply imposed a sentence of ten months is disingenuous and ignores the record in this matter.

As noted above, Lucas pointed out that the Court's three-prong sentence could likely not be achieved due to the fact that he was already in federal custody. As a result, the Court was required to re-formulate a sentence that would achieve the same purpose. As Lucas will once again escape any sanction for his state law crimes, this Court could no longer rely upon the additional deterrent effect of time spent in the county jail. As a result, the Court finds that a 24 month sentence of incarceration in federal custody is necessary to deter Lucas and protect the public from future crimes he may commit.

The Court also rejects any argument that it lacks the authority to run Lucas' federal sentence consecutive to his state sentence. In this regard, Lucas appears to confuse the Court's authority to make such an order with the reality of whether that order will be put into effect. The Court recognizes that by virtue of Lucas remaining in federal custody throughout this process, the State of Ohio will in all likelihood deem his sentence to have already expired. However, the mere fact that Lucas will likely never serve a consecutive sentence does not strip away this Court's statutory authority to order that his sentence run in such a manner.

Finally, the Court would note that it ordered three years of supervised release following Lucas term of incarceration during this resentencing. It is somewhat unclear whether the Sixth Circuit will find that the addition of supervised release results in a more severe sentence and therefore results in some argument regarding vindictiveness.

> The Due Process clause of the Fourteenth Amendment prohibits a court from imposing a harsher sentence on a defendant to punish him for exercising his right to appeal. *North Carolina v. Pearce*, 395 U.S. 711 (1969). In order to protect this

> right, appellate courts must apply a presumption that the trial court acted vindictively when a harsher sentence is imposed following appeal. *Id.* at 726. When this presumption applies, reversal is required unless the reasons for the longer sentence are apparent from the record. *Id.*

*Gonzales v. Wolfe*, 290 Fed. Appx. 799, 812-13 (6th Cir. 2008).

The Court believes that a term of supervised release is necessary in this manner. While the Court did not impose this term at the conclusion of the first sentencing hearing, a closer review of Lucas' conduct reveals the need for continued supervision. This need was highlighted to the Court through a supplement memorandum provided by the probation department that was prepared on January 20, 2012. The memorandum succinctly highlights Lucas' lack of punishments from his state crimes and the lack of deterrent effect his 78 month sentence had on him. Accordingly, the Court believes that supervision is necessary to protect the public following Lucas' release.

The Court would also note that the supplemental memorandum discussed during Lucas' sentencing was prepared by his probation officer. No one within the Court system has had more direct interaction with Lucas than the officer that supervised him during his seven months preceding this violation. That officer, with full knowledge of Lucas' past and present conduct, recommended the imposition of the statutory maximum of thirty six months. While the Court certainly took that recommendation into consideration due to the significant knowledge of Lucas held by the probation officer, the Court ultimately found that a sentence below the statutory maximum was appropriate.

The Court also highlighted Lucas' past criminal history and other 3553(a) factors during its oral pronouncement of sentence. It will not reiterate that analysis herein.

**VII. Conclusion**

This matter was first heard on July 15, 2011, upon the request of the probation office for a finding that Lucas had violated the conditions of his supervised release. Lucas was present and represented by counsel. Upon consideration of statements of counsel, the Court found that the terms of the Lucas' supervised release had been violated as follows:

1) New Law Violation: On three separate dates, Lucas sold crack cocaine to a cooperating source who was working with Mahoning Valley Law Enforcement Task Force.

Lucas is hereby resentenced to the Bureau of Prisons for a term of 24 months with his sentence to run consecutive to his state sentence. Following completion of his sentence, Lucas shall continue on supervised release for three years.

Lucas is hereby remanded to the custody of the United States Marshal, Akron, Ohio.

IT IS SO ORDERED.


 January 25, 2012                     /s/John R. Adams
Date                                JOHN R. ADAMS
                                    UNITED STATES DISTRICT JUDGE